IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MATTHEW ELLIS, an individual,

    Plaintiff,

v.

MEDICAL AIR SERVICES ASSOCIATION,
INC., a Foreign Profit Corporation,

    Defendant.
_____/

Case No.:

## COMPLAINT AND DEMAND FOR RELIEF

Plaintiff, MATTHEW ELLIS, by and through the undersigned counsel, hereby files this Complaint and Demand for Relief against Defendant, MEDICAL AIR SERVICES ASSOCIATION, INC., a Foreign Profit Corporation, and alleges as follows:

### PARTIES

1. Plaintiff Matthew Ellis ("Ellis" or "Plaintiff") is a natural person and resident of West Virginia, and is otherwise *sui juris*.

2. Defendant Medical Air Services Association, Inc. ("MASA" or "Defendant") is a corporation incorporated under the laws of Oklahoma and authorized to do business in Florida, with its principal place of business at 1250 S. Pine Island Road, Suite 500, Plantation, Florida 33324 and is otherwise *sui juris*.

### JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it involves claims arising under federal law. *See* 42 U.S.C. §§ 12112, 12117.

4. This court has personal jurisdiction over Defendant because its principal place of business is in Florida at 1250 S. Pine Island Road, Suite 500, Plantation, Florida 33324.

5. Venue is proper in this district pursuant to: (i) 28 U.S.C. § 1931(b)–(d), because the Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district; and (ii) 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this district, the relevant employment records are maintained in this district, and Defendant maintains its principal office in this district.

6. All conditions precedent to bringing this lawsuit have occurred, been performed, or been excused.

## GENERAL ALLEGATIONS

### Background

7. MASA is a medical transportation company that provides medical emergency transportation solutions for over two million members located throughout the world.

8. In or around late 2015, MASA hired Ellis to work remotely as a Sales Manager in MASA's Group Benefits Department.

9. Ellis excelled as Sales Manager. So much so, that in 2018, MASA promoted Ellis to Regional Director of Sales.

10. Indeed, throughout his tenure at MASA, Ellis won several sales awards as one of the company's top performers, including the prestigious President's Circle award three years in a row.

11. In fact, Ellis' stellar sales performance not only earned him a Rolex, but he also received several all-expenses paid vacations.

12. Needless to say, everything was going splendidly for Ellis at MASA.

13. Splendidly, that is, until Ellis confided in Vice President of Sales Ken Euler ("VP Euler").

**Ellis Shares that His Child Is Disabled and Is Terminated Shortly Thereafter**

14. Ellis is the father of a nonspeaking child with L3 Autism.

15. In or around the Fall of 2022, Ellis confided in VP Euler that he was having some behavioral difficulties with his child.

16. On a few occasions, Ellis had to go to his child's school to calm the child down and address the behavior issues.

17. These sporadic trips to the child's school never lasted more than an hour.

18. Because Ellis worked remotely, these trips caused minimal to no disruption to Ellis' work.

19. In fact, Ellis was performing exceptionally well and continuing to bring MASA high monthly commissions.

20. Yet, on or around March 30, 2023, MASA terminated Ellis' employment.

21. But as it turns out, there was an explanation: discrimination.

22. Indeed, the inception of Ellis' termination began during a conference call with MASA's upper management on December 15, 2022.

23. There, Senior Vice President Tony Lodovico ("SVP Lodovico") discussed whether or not to get rid of certain employees in the Second Quarter of 2023.

24. SVP Lodovico repeatedly brought up the importance of whether or not the employees were "culture fits" for MASA.

25. SVP Lodovico explained: "just because someone is making 100% or greater of their goal, doesn't mean they are the right culture fit."

26. Among the employees discussed was Ellis.

27. VP Euler explained that Ellis was not a good culture fit because Ellis had "a lot of things on his plate" due to his "personal life, with his personal struggles with his son."

28. SVP Lodovico agreed. He added: "it's a tough fit."

29. SVP Lodovico further commanded that MASA needs to watch Ellis closely over the coming months—not from a performance standpoint, but from a "culture fit" standpoint—before making the ultimate decision to terminate Ellis' employment.

30. And watch Ellis closely, they did. MASA fired Ellis three and a half months later; not for his performance, but because he was a poor "culture fit" for having a disabled child.

### Ellis Seeks Vindication

31. On or around December 12, 2023, Ellis dual-filed his charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

32. On June 26, 2024, Ellis was issued a Notice of his Right to Sue from the EEOC. Ellis has therefore exhausted his administrative remedies and can thus bring his discrimination claims under Title VII of the Civil Rights Act ("Title VII").

33. Accordingly, Ellis timely files suit to vindicate his rights under Federal law.

### COUNT I — ASSOCIATIONAL DISABILITY DISCRIMINATION (ADA)

34. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 33 above, as though fully set forth herein.

35. This is an action for violation of the Americans with Disabilities Act ("ADA"), which provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

36. The ADA further prohibits discrimination against an employee based upon the employee's familial association with a disabled person. *See* 42 U.S.C. § 12112(b)(4) (defining "the term 'discriminate against a qualified individual on the basis of disability'" as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association").

37. At all material times hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 12111(4).

38. At all material times hereto, Defendant was an Employer as defined by 42 U.S.C. § 12111(5).

39. At all times material hereto, Plaintiff was qualified for the position he held.

40. Plaintiff is the father of a child with Autism.

41. Autism is a disability within the meaning of the ADA. *See* 28 C.F.R. § 35.108(d)(2)(E).

42. At all times material hereto, Defendant knew Plaintiff's child had Autism.

43. Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment on the basis of Plaintiff's familial association with a disabled person, and by discharging Plaintiff's employment on the basis of Plaintiff's familial association with a disabled person.

44. Specifically, Defendant discriminated against Plaintiff due to Plaintiff's familial association with a disabled person by, *inter alia*: subjecting him to disparate oversight, terminating his employment, and more.

45. Defendant's actions, as described above, constitute prohibited employment practices in violation of the ADA.

46. Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's disability was, at a minimum, a determining factor in Defendant's adverse employment decisions.

47. As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss of retirement benefits, compensatory damages, lost wages, lost commissions, lost bonuses, and other employee benefits, all to his detriment, in an amount to be determined according to proof.

48. As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

49. Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages.

50. Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, MATTHEW ELLIS, respectfully requests this Court enter judgment against Defendant, MEDICAL AIR SERVICES ASSOCIATION, INC., for damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

As to each count, Plaintiff, MATTHEW ELLIS, respectfully requests a trial by jury on all issues so triable.

Dated this 10th day of July, 2024.

Respectfully submitted,

By: */s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
**REID LEVIN, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
Phone: (561) 866-6089
Email: reid@reidlevinpllc.com

*Attorney for Plaintiff Matthew Ellis*